## In re 31 WEST 72ND STREET CORPORATION.

District Court, S. D. New York.

Sept. 3, 1937.

Shaine & Weinrib, of New York City (Maurice L. Shaine and Jack Gross, both of New York City, of counsel), for debtor.

Delafield, Thorne & Marsh, of New York City, for Hurd Committee for Prudence Certificates.

Thomas Cradock Hughes and Emanuel Celler, both of New York City (Irving Rozen, of New York City, of counsel), for trustees of the Prudence Co., Inc.

George M. Jaffin and Pollock & Nemerov, all of New York City, for bondholders.

O'Malley & Wilson, of New York City, for Olcott Certificate Holders Committee.

Newman & Bisco, of New York City, for Manufacturers Trust Co.

Hoffman & Hoffman, of New York City, for certificate holders.

Philip V. Brown, of New York City, for Elected Committee of Certificate Holders.

Larkin, Rathbone & Perry, of New York City, for Central Hanover Bank & Trust Co.

Glass & Lynch, of New York City, for Sterling Nat. Bank & Trust Co.

Appel & Tannenbaum, of New York City, for Leah Askin et al.

MacIntyre, McNally & Downey, of New York City, for City Bank-Farmers Trust Co.

LEIBELL, District Judge.

The debtor herein filed a petition in this court on August 3, 1936, for reorganization under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). Its principal obligation was on a real estate bond with an unpaid balance due thereon of $1,384,750, secured by a mortgage on the debtor's principal asset, the hotel premises known as the Hotel Olcott at the above address. The mortgage on said premises had been certificated in the manner hereinafter set forth. A plan of reorganization was offered by the debtor to its creditors, who were principally the owners of the mortgage certificates, and was duly accepted by the creditors and confirmed by this court.

In respect to a fund of $15,090 held by the Central Hanover Bank & Trust Company, as depositary, the order confirming

the plan of reorganization contained a recital and provision as follows:

"* * *; and

"The Court having been advised by Larkin, Rathbone & Perry, by Henry Kelly, attorneys for the Central Hanover Bank & Trust Company, the depositary of the Consolidated First Mortgage herein, that certain claims have been made against the fund of $15,090 now held by it, which fund is referred to in the Plan of Reorganization on page No. 12, paragraph marked '4', by certain Certificate Holders who claim that said fund is applicable in its entirety to the retirement of certificates held by them, and the Court having been further advised that there are objections to the said claims of said certain Certificate Holders, and it appearing that the issue raised as to the ownership and proper disposition of said fund of $15,090 remains undetermined at this time; and the said Central Hanover Bank & Trust Company having applied to this Court for instructions as to the disposition of said fund; and * * *

"It is Ordered * * *

"20. That the fund of $15,090, now in the possession of Central Hanover Bank & Trust Company, remain in its possession until the final determination by this Court as to the ownership and disposition of said fund, which determination shall be made by this Court after hearing all claimants to the said fund as well as all parties who have intervened in these proceedings, which hearing is to be held on a day to be fixed by this Court and upon no less than five days' written notice thereof to be given by the Debtor herein, of said hearing, to all claimants to said fund and all parties who have intervened or otherwise appeared in these proceedings, and upon the final determination of the ownership of said fund and the proper distribution to be made thereof by the Court, said Central Hanover Bank & Trust Company shall make such distribution of said fund of $15,090 as this Court shall direct, and in the event that the Court shall determine that said fund or any part thereof is not to be applied to the retirement of any specific certificates but is to be used generally for amortization or sinking fund purposes, then and in that event such fund or such portion thereof shall be paid over by said Central Hanover Bank & Trust Company to the Trustee herein named, and the Trustee shall upon receipt of same

apply it to the purchase and retirement of certificates in the manner provided for in said Indenture and Extension and Modification Agreement. The Debtor's Plan of Reorganization shall be deemed amended in accordance with the foregoing provision, and it appearing to the Court that such fund will in any event be applied to the amortization of the Debtor's Consolidated First Mortgage, the foregoing amendment is hereby adjudged to be not materially adverse to the interest of any creditor or stockholder of the Debtor."

By an order, dated July 13, 1937, this court set a date for a hearing in respect to claims to said fund. The order provided:

"Ordered, that a hearing be held before this Court in Room 506 of the United States Court House, Foley Square, in the Borough of Manhattan, City of New York, on the 2nd day of August, 1937, at 10:30 A. M. for the purpose of hearing all claimants to the said fund, as well as all parties who have intervened or appeared in these proceedings; and it is further

"Ordered, that all those claiming that said fund is applicable to the retirement only of certificates held by them, maturing April 1, 1933 and October 1, 1933 file verified statements setting forth such claims in detail with Shaine & Weinrib, attorneys for the Debtor herein, at their office, No. 295 Madison Avenue, Borough of Manhattan, City of New York, on or before the 27th day of July, 1937; and it is further

"Ordered, that the service of a copy of this order on all claimants to the said fund holding certificates of participation maturing April 1, 1933 and October 1, 1933, as well as all parties who have intervened or otherwise appeared in these proceedings, on or before the 19th day of July, 1937, shall be deemed good and sufficient service hereof."

Only one claimant, City Bank-Farmers Trust Company, as trustee, filed a notice of claim to the fund pursuant to said order.

On the return day, an affidavit was filed showing proper service of the order on all certificate holders who might claim priority in respect to said fund and also on all parties to this proceeding. The court took proof in respect to the alleged priority of City Bank-Farmers Trust Company, as trustee, the holder of certificates for $506

and $8,600 and of the trustees of Prudence Company, Inc., a holder of an $84 certificate. The court also heard representatives of committees of certificate holders, and also the debtor, who contended that this fund should be placed in an amortization fund for the benefit of all the certificate holders, and used to redeem certificates in the manner set forth in the amended plan, as confirmed by the court.

The debtor, 31 West 72nd Street Corporation, entered into an agreement with Prudence-Bonds Corporation on July 15, 1931, whereby the liens of some seven mortgages were consolidated as a single first mortgage for $1,457,250 on the premises of the debtor, and the time of the payment of the said sum was extended until April 1, 1936, with a provision that certain installments of $14,500 each were to be paid on account of principal semiannually beginning October 1, 1931.

On July 30, 1931, Prudence-Bonds made a deposit agreement with Central Hanover, under which title to the consolidated mortgage was transferred to the depositary and Prudence-Bonds was authorized to issue certificates of participation in the mortgage. Annexed to the deposit agreement was a printed form of certificate that the Prudence-Bonds reserved the right to issue, which contained the following opening paragraph: "Prudence-Bonds Corporation hereinafter called the 'Corporation', has received from ———— hereinafter called the 'Registered owner' ———— for the purchase of, and hereby assigns to the registered owner, an undivided share or part equal to that amount, and due on April 1, 1936, with interest at the rate of five and one-half per centum per annum, payable semi-annually on the first days of April and October, from ————, 19—, in the bonds and mortgages, as consolidated, in the principal amount of $1,400,000.00, with payment extended by agreement with 31 West 72nd Street Corporation (hereinafter called the 'bond and mortgage'), covering the premises situate on the northerly side of West 72nd Street 275 feet east of Columbus Avenue, in the Borough of Manhattan, County, City and State of New York."

The said deposit agreement, paragraph XXIII thereof, provided as follows:

"XXIII. The Depositary is hereby authorized to and hereby does appoint the Corporation as its Agent to collect the interest and principal upon the Bond and Mortgage and to disburse the same whether before or after any default under said certificates or the Bond and Mortgage, and the Depositary does hereby appoint the Corporation as its Agent to collect such principal and interest and to disburse the same in the manner herein and in the certificates provided, and does hereby authorize and direct the Mortgagor and/or the owner of the premises covered by the Bond and Mortgage to make such payments of principal and interest, including any prepayments of principal or interest, directly to the Corporation until otherwise notified in writing by the Depositary. Any instalments paid by the Mortgagor and/or the owner of the premises covered by the Bond and Mortgage in reduction of the principal of the Bond and Mortgage shall be held as a sinking fund, and at the option of the Corporation when and as often as the moneys in said sinking fund amount to a sum sufficient to redeem such certificate or certificates as the Corporation may elect to redeem, such moneys shall be applied to the payment and retirement pursuant to the terms hereof and of said certificates, of one or more certificates selected by lot by the Corporation The Depositary is authorized to appoint and does hereby appoint, the Corporation as its Agent to effect any such payment or retirement of certificates and to hold such sinking fund. The Depositary shall be under no duty or responsibility in respect to any amounts collected by the Corporation, or as to the disbursement of the same and shall not be responsible in any manner for any moneys held by the Corporation in the sinking fund or for the application of the same by the Corporation. The Depositary may, by instrument in writing addressed to the Corporation and the Mortgagor, revoke the authority hereby conferred upon the Corporation to collect interest and principal upon said bond and mortgage, and in the event of such revocation may direct the Mortgagor to make all further payments of principal or interest or any prepayments of principal or interest, to the Depositary, and in such event, the Corporation shall, at the written request of the Depositary, pay over to the Depositary all sums received by it on account of such principal and interest, and not theretofore actually disbursed by it in the payment of principal and/or interest to the certificate holders, and in-

cluding any moneys held by it in any sinking fund."

Another paragraph of the deposit agreement relates generally to the redemption of certificates by Prudence-Bonds. Paragraph VII provides in part: "VII. The corporation expressly reserves to itself on any interest day by giving not less than thirty (30) days' notice in the manner herein provided, the right to redeem before maturity any or all of such certificates outstanding by payment of the face principal amount thereof, together with all interest accrued thereon to the date' of redemption. The Corporation shall determine which certificates shall be so redeemed and discharged."

■ But this provision does not apply to the redemption of certificates with moneys payable to Prudence-Bonds as installments on the mortgage, because under paragraph XXIII those moneys were to constitute a sinking fund to pay off certificates drawn by lot for that purpose and without any notice to the certificate holder. Paragraph VII would apply to a situation where the Prudence-Bonds might, for any reason, decide to call or redeem any or all of the certificates with its own corporate funds—not the sinking fund. The certificates claiming priority against this fund were never drawn by lot for payment, but were issued in advance with their respective due dates typed therein.

The deposit agreement recited the fact that the corporation was the owner of a senior and prior interest of $1,400,000 in the said bond and mortgage aforementioned, which was in the principal sum of $1,457,250, the junior interest being held by the Realty Associates Securities Corporation under a certain ownership agreement executed by the two corporations to July 30, 1931. The specimen form of certificate annexed to the deposit agreement contained this provision: "'All certificates evidencing ownership of a share or part in said bond and mortgage are issued and held pursuant to a deposit agreement dated July 30, 1931, between the Corporation and said Central Hanover Bank and Trust Company, and the holder of this certificate, by accepting the same agrees to all of the conditions and agreements contained in said deposit agreement. * * *"

The specimen certificate annexed to the deposit agreement had printed on the back thereof (1) a guarantee of payment by the Prudence Company, Inc., in the following form:

"The Prudence Company, Inc., hereby Certifies to the holder of the within certificate, that by the guarantee therein mentioned and now in the possession of the depositary named in the Deposit Agreement referred to in said certificate, it has guaranteed payment of the interest on said certificate when due, and the payment of principal thereof when due, or within eighteen months thereafter, together with interest thereon after maturity at the rate specified in said certificate, until payment of principal is effected or offered, as provided in said certificate.

"The Prudence Company, Inc., further Certifies and Guarantees that the share or part of said bond and mortgage represented by the foregoing certificate is not subordinate to any other share or shares thereof, and is not subject to any prior interest therein.

"By the acceptance of this certificate, the holder therefore agrees to the terms and conditions of said guarantee";

and (2) a certification by Central Hanover Bank & Trust Company, New York, depositary, reading as follows:

"Central Hanover Bank And Trust Company, New York, hereby Certifies that the bonds, mortgages, consolidation and extension agreement' referred to in the foregoing certificate; the guarantee of The Prudence Company, Inc., guaranteeing payment of principal and interest; the insurance policies and other instruments and evidences of title relating to said bond and mortgage; and the appraisal referred to in said certificate, are held by it for the benefit of the holder of said certificate and of any other persons interested in said bond and mortgage, and further Certifies that the share or part of said bond and mortgage, represented by the foregoing certificate, is not and shall not be subordinate to any other share or shares thereof, and is not and shall not be subject to any prior interest therein.

"Central Hanover Bank And Trust Company, further Certifies that the foregoing certificate and all other certificates at any time issued, outstanding and certified by it against said bond and mortgage, will not in any event, exceed the amount of principal at the time owing on said bonds, mortgages, consolidation and extension agreement."

The deposit agreement of July 30, 1931, contained a provision as follows:

"II. The Corporation hereby reserves the right, and such right is hereby granted to it by the Depositary to issue certificates substantially in the form set forth in Schedule A attached hereto; each certificate so issued, when authenticated by the Depositary, shall vest in the holder thereof, an undivided share or part to the extent of the principal amount therein stated in the aggregate principal of said Bond and Mortgage, and interest on the principal amount of said certificate at the rate provided in said certificate, out of the interest to fall due on said Bond and Mortgage. Such certificates shall be of the denominations as may from time to time be determined by the Corporation in writing on any order for the authentication thereof.

"The certificates may be registered, such registration being noted on the certificate, and then shall be transferable only on the books of the Corporation, in accordance with the regulations of the Corporation."

Although the deposit agreement and the certificate annexed thereto as Schedule A clearly indicated that the certificates to be issued were to bear the due date, April 1, 1936, nevertheless, Prudence-Bonds issued certain certificates having a prior maturity date, to wit, $750 of certificates being payable April 1, 1933; $14,500 of certificates payable October 1, 1933, and a similar amount of certificates payable on April 1st and October 1st for the two years, 1934 and 1935.

Paragraph III of the deposit agreement contained this provision: "* * * It Being Understood And Agreed between the parties hereto and by and with the persons who will from time to time be the holders of said certificates, that each certificate shall represent and be an evidence of the ownership of an undivided share or part to the extent of the principal amount therein stated, in the aggregate principal of said Bond and Mortgage and the mortgage debt secured thereby (with interest at the rate specified in said certificate) and that each holder is entitled to a like proportion, right or benefit in said guarantees of payment, policy or policies of title insurance, insurance policies and other instruments and evidences of title relating thereto, accompanying the same, or which may at any time accompany or be col-

lateral thereto, and held by the Depositary, each such share or part being owned by the holder thereof without priority of any share or part over any other, whether held by the Corporation or Depositary or by the holder of any other certificate to be issued hereunder, and each share or part not being subordinate to any other shares thereof and not subject to any prior interest in said bond and mortgage."

I have examined the two certificates held by the City Bank-Farmers Trust Company, as trustee, and compared them with the specimen certificate annexed to the deposit agreement. It is apparent that they are of two different printings. The first paragraph of the face of said certificate and the due date on the back thereof so indicate. The due date is printed (April 1, 1936) on the face and back of the specimen certificate annexed to the deposit agreement, whereas it is typed in at a blank space left for that purpose on the two certificates held by the City Bank-Farmers Trust Company, as trustee.

The two certificates held by the City Bank-Farmers Trust Company were issued to the Prudence-Bonds Corporation itself on the following dates:

Certificate for $506 due April 1, 1933, was issued September 3, 1931 and was deposited September 10, 1933, as collateral for the Third Series Trust Fund. On April 26, 1937, this certificate was transferred into the name of City Bank-Farmers Trust Company, successor trustee, under a trust agreement, dated October 1, 1924, between Prudence-Bonds Corporation and the Bank of America—Third Series.

Certificate for $8,600 due October 1, 1933, was issued September 29, 1931, and deposited on the same day as collateral for the Seventh Series Trust Fund. On April 26, 1937, this certificate was transferred into the name of City Bank-Farmers Trust Company, successor trustee, under a trust agreement dated October 1, 1935, between Prudence-Bonds Corporation and the Bank of America—Seventh Series.

A semiannual amortization payment of $14,500 became due and payable from the debtor to the Prudence-Bonds April 1, 1933, and another similar payment on October 1, 1933. These payments, together with interest, were made in one-sixth installments monthly in advance on the due date, so that by the due date the Prudence-Bonds had received all of the interest

payable on the interest date and also the $14,500 amortization, out of the $14,500 amortization thus paid by April 1, 1933, Prudence-Bonds paid off the balance of the junior interest of Realty Associates, which, under the terms of the ownership agreement between the Realty Associates and Prudence-Bonds, was entitled to priority of payment. The amount of the balance payable to the junior interest was $13,750. The balance of the $14,500 due April 1, 1933, namely, $750, was received by the Prudence-Bonds and apparently one certificate of $160 was paid off, leaving the sum of $590 in the hands of the Prudence-Bonds. By October 1, 1933, a further sum of $14,500 was paid to the Prudence-Bonds by the debtor.

Prudence-Bonds had advised the Central Hanover on April 3, 1933, of the fact that it had received the $14,500 on the mortgage, dated April 1, 1933, and on October 1, 1933, a similar communication was sent to the Central Hanover advising them of the further payment of $14,500 on October 1, 1933, and that the unpaid principal amount of the mortgage was then $1,384,750.

On December 19, 1933, Prudence-Bonds forwarded to Central Hanover, the depositary, a check to the order of the trust company in the sum of $15,090, the sum of $590, being the balance of the April 1, 1933, installment on principal as above explained and the sum of $14,500 representing the October 1, 1933, installment of principal, and at the same time on said date, December 19, 1933, Prudence-Bonds requested the trust company to "kindly consider same additional collateral for certificates outstanding."

On February 5, 1934, the Central Hanover wrote the Prudence-Bonds in reference to this $15,090 and stated: "Are we correct in assuming that you have exercised the option given you in Article XXIII of the Deposit Agreement and have elected to redeem not only the balance of certificates outstanding which became due on April 1, 1933, but also the certificates which became due on October 1, 1933? If so, will you please fix the date for redemption of same, and advise us of the names and addresses of the registered owners and the amounts due each of them."

In answer to that query Prudence-Bonds wrote Central Hanover, February 8, 1934, as follows:

"This corporation has caused The Prudence Company, Inc. to make payment to you of $15,090.00, representing the balance on hand received from the mortgagor in payment of the principal installments due April 1, 1933 and October 1, 1933.

"This corporation does not desire to exercise the option given in Article XXIII of the Deposit Agreement, dated July 30, 1931, between Prudence-Bonds Corporation and Central Hanover Bank and Trust Company, as Depositary."

It should be recalled that under said article XXIII of the deposit agreement the installments paid on principal became part of a sinking fund, and that the Prudence-Bonds had the option or right to elect to use that sinking fund money to redeem certificates "selected by lot" by the Prudence-Bonds, and further that the depositary had the right at any time to revoke the agency it had given the Prudence-Bonds and to demand payment to it by Prudence-Bonds of all sums theretofore received by Prudence-Bonds and undisbursed "including any moneys held by it in any sinking fund." So that in effect the Prudence-Bonds, by its letters of December 19, 1933, and February 8, 1934, did two things: It turned over $15,090, which it had in the sinking fund, to the depositary and advised the depositary that it did not intend to redeem any certificates out of that fund.

The City Bank-Farmers Trust Company was designated, as trustee, by Prudence-Bonds, under two indentures covering two series of bonds issued by Prudence-Bonds. The security for those two bond issues were various assets, bonds and mortgages, certificates, etc., owned by Prudence-Bonds. Among the certificates set apart for said trusts for the third and seventh series of bonds were the certificates of $506 and $8,600 above mentioned, which had originally been issued by Prudence-Bonds to itself.

On January 20, 1934, City Bank-Farmers Trust Company, as trustee, the holder of the certificate of $506, payable April 1, 1933, and the certificate for $8,600, payable October 1, 1933, wrote to the Prudence Company, the guarantor, and asked whether or not it was in order for them to present these certificates for payment.

On February 2, 1934, the Prudence Company replied, stating that they had

deposited certain funds with the depositary in December, 1933, and suggesting that the City Bank communicate with the depositary, Central Hanover.

On February 6, 1934, the City Bank wrote the Central Hanover in respect to the two said certificates, stating: "It is our understanding that funds on deposit with you to pay all certificates outstanding on these maturities and we will appreciate your advising us whether you will make payment if same are presented to you."

On February 9, 1934, the Central Hanover wrote the City Bank advising them that funds in an amount sufficient to cover the payment of these items were deposited with them (Central Hanover), and that they were awaiting a reply to the request they had sent the Prudence-Bonds "for further instructions as to the disbursement of the amortization payments of the underlying mortgage."

On February 16, 1934, the Central Hanover wrote the City Bank, supplementing the letter of February 9th and advising the City Bank that counsel for the Central Hanover was of the opinion that the amount deposited with them was "not available for distribution but rather, under the instructions of the Prudence-Bonds Corporation, must be held as additional collateral for certificates outstanding."

On February 16, 1934, the Central Hanover wrote the Prudence-Bonds inclosing a copy of the letter received from the City Bank and a copy of the opinion of counsel for the Central Hanover and informing the Prudence-Bonds that it, the Central Hanover, had advised the City Bank that Central Hanover was unable to disburse the principal amount to cover certificates, in view of the instructions received from Prudence-Bonds.

On June 1, 1934, City Bank wrote Central Hanover tendering the two certificates and asked for payment.

On June 6, 1934, Central Hanover returned the tendered certificates to the City Bank advising them that nothing had occurred which altered the situation as outlined in Central Hanover's letter to the City Bank of February 16, 1934, and suggesting that the City Bank communicate with Prudence-Bonds.

On June 19, 1934, Prudence-Bonds wrote Central Hanover stating that counsel for Prudence-Bonds had advised that it

was in order for Prudence-Bonds to advise Central Hanover, the depositary, to pay the said two certificates on presentation "for which you are now holding sufficient funds as all interest and taxes have been paid including the April 1, 1934 interest, and April 1, 1934, taxes."

On June 21, 1934, City Bank wrote Central Hanover referring to the letters of June 1st and June 6th and stating that City Bank had received a copy of the letter from Prudence-Bonds addressed to Central Hanover, authorizing payment of the certificates.

Together with its said letter of June 21, 1934, the City Bank tendered the two certificates for payment, which was refused.

The following dates are also important in this chronology:

On June 29, 1934, the Prudence-Bonds Corporation filed in the Eastern District a petition for reorganization under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207).

On September 29, 1934, the Banking Department of the State of New York took over the Prudence Company, Inc.

On February 1, 1935, trustees for Prudence Company, Inc., were appointed in a proceeding under section 77B of the Eastern District.

The debtor herein failed to pay the full interest due on October 1, 1934, and thereafter paid only such part of the interest due as its resources permitted.

Interest on the $14,500 of certificates maturing October 1, 1933, was paid to the holders thereof, at the same rate and for the same period as all other certificate holders received interest, prior to the reorganization of the debtor herein. Whatever interest was paid by the debtor was, after a deduction for servicing charges, spread out and distributed by the Prudence Company, Inc., the collecting and servicing agent of Prudence-Bonds Corporation, to all outstanding certificates, except that the holders of the $506 certificate and the $84 certificate, maturing April 1, 1933, do not appear to have received any interest after April 1, 1934. The debtor was paying such interest as it could on the principal of its mortgage, which after October 1, 1933, was $1,384,750, but the Prudence Company, Inc., was distributing that interest to practically all the certificate holders as above indicated.

There were some statements made on the record by an attorney herein as to his experience in purchasing certificates in Prudence Company mortgages, and a prospectus in respect to this mortgage issue was received in evidence. The prospectus, after describing the property and its advantages, contained this statement:

"The Borrowers Reduce This Mortgage By Making Payments As Follows:

| | | | |
|---|---|---|---|
| Apr. 1, 1933 | $ 750 | Oct. 1, 1934 | $14,500 |
| Oct. 1, 1933 | 14,300 | Apr. 1, 1935 | 14,500 |
| Apr. 1, 1934 | 14,500 | Oct. 1, 1935 | 14,500 |
| | April 1, 1936 | $1,326,750 | |

"These payments increase the already ample margin of safety. We offer certificates falling due on the above dates, subject to prior sale."

There was no legal proof that the certificate holders who bought the certificates ever saw this prospectus except one, nor was there any proof that every purchaser of a certificate received a copy of the prospectus. Further, there was no proof offered as to what was the practice of the company in selling these certificates, although the court told the parties that they could put a witness on the stand if they wished to put in any proof on that point.

The offer by Prudence-Bonds Corporation for sale to the public of certificates maturing April 1 and October 1, 1933, 1934, and 1935, in amounts corresponding to the payments due on the principal of the mortgage on said dates, was in violation of the terms of the deposit agreement. The certificate holders generally cannot be charged with knowledge of what was in the prospectus, but under the terms of the certificates every certificate holder was charged with notice of the provisions of the deposit agreement, pursuant to which the certificates were supposed to have been issued. It may be that the Prudence-Bonds Corporation itself came to realize that the issuance of certificates herein maturing prior to the due date of the mortgage was not authorized by the deposit agreement, because only one of said certificates, a certificate for $160 maturing April 1, 1933, was actually paid. The request of Prudence-Bonds on June 19, 1934, that Central Hanover pay the certificates maturing April 1, 1933, and October 1, 1933, was a complete reversal of its position theretofore taken of having the Central Hanover hold the $15,090 installment payments of principal as collateral for all certificates outstanding. The request was made ten days before Prudence-Bonds Corporation itself sought reorganization under section 77B of the Bankruptcy Act.

Counsel have cited in their briefs a number of cases but I have not found among the cases decided in either our state or federal courts any case involving the same situation we have here. I believe that in this case, in respect to the conflicting claims to the fund, "equality is equity," and that the natural equities of the case require that the pro rata rule should be applied. This will be accomplished by having the $15,090 now held by the Central Hanover Bank & Trust Company turned over to the trustee of the mortgage appointed by the court in the order approving debtor's plan of reorganization, the said sum to become part of an amortization fund in which future amortization payments of the debtor will be deposited and used for the redemption of certificates at certain specified times at the most attractive market price.

The claims of priority to the fund of $15,090 made by holders of certificates maturing April 1, 1933, and October 1, 1933, are dismissed.

Submit order on notice.